Argued November 19, 1941.
Section 3 of Article I (Preliminary Provisions) of the Unemployment Compensation Law (Act of December 5, 1936, P.L. 1937, p. 2897) constitutes a Declaration of Public Policy with respect to the aims and purposes of the legislature in establishing a system of unemployment compensation. It is not a mere preamble to the statute, but a constituent part of it and is to be considered in construing or interpreting it.
It declares: (1) That economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of the Commonwealth. (2) That involuntary unemployment and its resulting burden of indigence falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions, in the form of poor relief assistance. (3) That security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployedthrough no fault of their own. (4) That the legislature, therefore, declares that in its considered judgment the public good and the general welfare of its citizens require the exercise of the police powers of the Commonwealth in the enactment of this Act for the compulsory setting aside of unemployment reserves tobe used for the benefit of persons unemployed through no fault oftheir own.
The reserves to be thus set aside are to be contributed by employers only — see Article III. None are to be contributed by or charged against employes. Therefore, apart from the benefitsconferred on them by the *Page 248 
Act, they have no individual monetary interest in the reserves, such as might result if they had made contributions to them. And the basic principle at the root of the Act, justifying the exercise of the police powers of the Commonwealth in its enactment, is that the reserves thus set aside from the enforced contributions of employers are to be used for the benefit of persons unemployed through no fault of their own. Subsequent provisions as to eligibility (sec. 401), or ineligibility (sec. 402), for compensation must all be read and construed as subject to this basic and fundamental declaration. If it is clear that a person's unemployment is the result of his own fault, he is not eligible for compensation under the Act, irrespective of his willingness to apply for, or accept suitable employment when offered to him, or that his leaving work was not wholly voluntary.
The claimant in this case became unemployed by reason of his conviction and imprisonment for larceny. It is unimportant that the theft of which he was convicted was not from his employer. He was imprisoned in jail for sixty-two days. When released, he found that his employer had hired another person to do the work formerly done by him. An employer cannot be blamed because of his unwillingness to employ a thief, or one guilty of a crime involving dishonesty or moral turpitude, whether the offense was committed to his injury or another's. He may be willing to give his employe another chance, but that is his personal prerogative. The Declaration of Public Policy negatives the conclusion that one who has lost his employment because of his commission of a crime involving moral turpitude shall receive compensation for the unemployment which resulted from his own criminal act.
The appeal is sustained and the decision of the Unemployment Compensation Board of Review is reversed. *Page 249