335 P.2d 533

Claim of Glenn V. WATTS, For Employment Security Benefits, Claimant-Appellant,

v.

EMPLOYMENT SECURITY AGENCY, State of Idaho, Respondent.

No. 8668.

Supreme Court of Idaho.

Feb. 11, 1959.

Frank L. Benson, Atty. Gen., John W. Gunn, Asst. Atty. Gen., for respondent.

Frank E. Chalfant, Jr., Boise, for appellant.

KNUDSON, Justice.

Appellant had been employed as a "scaler" for about three months prior to November 7, 1957, when he was discharged for alleged misconduct in connection with his employment. His employer, Idaho Pine Company, was engaged in a logging operation fifteen miles north of Lowman, Idaho, and maintained its main office at Meridian, Idaho. Appellant maintained his home at Boise, Idaho. The actual logging operation was carried on by a Mr. Coker under a logging contract and the area being logged was under the supervision of the Forest Service. Appellant was the only one working in the logging area employed directly by Idaho Pine Company. It was his duty as the only scaler employed, to scale all logs which were being removed under said logging operation. The Forest Service did not permit removal of any logs from the sale area that had not been scaled.

Appellant was employed on a monthly salary, with one permitted draw during the month against his wages. Payment of his wages was made on the 5th day of the month for the preceding month for which wages were due. His pay check was usually delivered to him by a truck driver and received by him on the 6th day of the month. Through some unforeseen incident, his November 5th pay check was not given to the truck driver in time for its delivery to appellant on the following day, consequently, his pay check was a day late.

Customarily appellant would go to his home in Boise on weekends; however, after work on Wednesday, November 6, 1957, not having received his pay check, he decided to go to Boise, the record does not disclose the time of his arrival there. His explanation of his reason for going to Boise on this occasion was that "the wife had to have some money". His further explanation was that he had heard a remark made by the contractor (Mr. Coker) to the effect that "The company was getting low on money" and it worried him since his pay check was overdue. He testified that on the morning of November 7,

1957, he started from his home to return to work but his car gave him trouble and he returned to Boise. He testified that during the remainder of that day he called his employer's office by telephone on three occasions but was unable to contact Mr. Lemon, the manager. He talked with the bookkeeper at the company office, but did not leave his name or any message. When he returned to his home at about one o'clock p. m. his wife informed him that Mr. Lemon had been looking for him, and shortly thereafter he left his home but did not leave word as to where he might be found. He got his car fixed about noon on November 7th, but decided not to return to work that day.

Between eight and nine o'clock the morning of November 7, 1957, appellant's employer Mr. Lemon received word that the Forest Service had shut down the logging operation and that it would so remain until a scaler was on the job. In an attempt to locate appellant Mr. Lemon went from Meridian to Boise and called at appellant's home on three occasions during that day, but was unable to locate him until nine o'clock that night.

The record does not clearly disclose appellant's work attendance record, however, it is clear that shortly before November 7th appellant had been late to work; this resulted in a warning from the Forest Service to appellant's employer that a recurrence would mean a shut down of the logging operation, which warning was known to appellant. When appellant was asked if he knew that the job would be shut down (on November 7th) if he was not there, he replied "I didn't know for sure, but kind of figured that".

In order to resume the logging operation Mr. Coker took over the work of scaling until a permanent employee was obtained.

Appellant gave no notice, directly or indirectly, to his employer that he had gone to Boise or that he could not or would not be at work the following day. From the time he left his place of work on the evening of November 6th until he met Mr. Lemon about nine p. m. the night of November 7th, appellant never notified his employer of his intention or his whereabouts. Appellant was discharged for misconduct.

Appellant has appealed from the Industrial Accident Board's order, after taking evidence, denying him unemployment compensation and affirming the prior decision rendered by the Employment Security Agency's appeals examiner, ruling appellant to be ineligible for employment security benefits because of being discharged for misconduct from his last employment.

Appellant by his assignments asserts insufficiency of the evidence to support the Industrial Accident Board's order. He contends that his conduct, here involved,

does not render him ineligible for unemployment compensation on grounds of misconduct.

Sec. 72–1366, I.C. which provides for the personal eligibility conditions of a benefit claimant under the employment security law of this state provides in part:

"Personal eligibility conditions.— The personal eligibility conditions of a benefit claimant are that—

\* \* \* \* \* \*

"(f) His unemployment is not due to the fact that he left his employment voluntarily without good cause, or that he was discharged for misconduct in connection with his employment; \* \* \*"

This Court has defined the term "discharge for misconduct" as used in sec. 72–1366(f), I.C. as meaning "wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees." Johns v. S. H. Kress & Co., 78 Idaho 544, 548, 307 P.2d 217, 219; Mandes v. Employment Security Agency, 74 Idaho 23, 255 P.2d 1049.

In the instant case appellant, of his own accord, left the jobsite without giving or attempting to give his employer any notice of his leaving. Appellant's testimony as to his reason for leaving is not persuasive. Appellant's principal excuse appears to have been that he felt some concern about his past-due pay check, yet the record is void of evidence to the effect that he made a single inquiry regarding his pay check during the entire period of time intervening his departure from his jobsite to the minute of his discharge. Notwithstanding the fact that appellant was, according to his own testimony, in touch with his employer's office on three occasions during the day of November 7th, the record is void of any showing that he even mentioned his pay check to anyone. Nor is there any evidence to indicate that he said or did anything about getting money for his wife during the same period. The record contains other testimony of appellant which could justifiably convince a trier of the facts in this case that appellant had become dissatisfied with conditions where he worked and that the excuses he gave for leaving the jobsite were not the real reasons. The fact that he left his place of work without notice to his employer is undenied. He made no reasonable effort to inform his employer concerning his absence from work. He, appellant, was the only one on the job who was employed as a scaler and he knew, as a result of his own previous tardiness, that the Forest Service had admonished his employer to the effect that a recurrence of his tardiness or absence from the job as a scaler would result in a shutdown of the entire logging operation, where some forty to fifty men were em-

**534**

ployed and approximately seventeen logging trucks were operating every day. Appellant "figured" that his absence on Nov. 7th would cause a shut down.

■ It is the burden of appellant to establish his eligibility for compensation benefits whenever his claim to such benefits is questioned. Doran v. Employment Security Agency, 75 Idaho 94, 98, 267 P.2d 628; Talley v. Unemployment Compensation Division of Industrial Accident Board, 63 Idaho 644, 124 P.2d 784.

■ The questions here involved, in the first instance, are questions of fact for the Industrial Accident Board, and its finding will not be disturbed on review when supported by substantial, competent evidence. Wolfgram v. Employment Security Agency, 77 Idaho 298, 303, 291 P.2d 279; Turner v. Boise Lodge No. 310, etc., 77 Idaho 465, 468, 295 P.2d 256.

■ The jurisdiction of this Court being limited to review of questions of law only, the board's findings will not be disturbed when supported by substantial evidence. Sec. 9, Art. 5, Constitution; sec. 72–609, I.C.; sec. 72–1368(i), I.C.; Stroscheim v. Shay, 63 Idaho 360, 373, 120 P. 2d 267; Townsend v. Cahoon Const. Co., 80 Idaho 425, 332 P.2d 880; Benson v. Jarvis, 64 Idaho 107, 127 P.2d 784.

■■ The evidence is such that a trier of the facts would be justified in concluding that appellant's actions here involved were inconsistent with that type of conduct which his employer has a right to expect and therefore is sufficient to support a finding that his conduct was in deliberate disregard of his employer's interests as found by the appeals examiner and affirmed by the Industrial Accident Board. See Doran v. Employment Security Agency supra.

The order appealed from is affirmed. Costs to respondent.

PORTER, C. J., and TAYLOR, SMITH and McQUADE, JJ., concur.