614 P.2d 955

**Leonard M. PARKER,
Claimant-Respondent,**

v.

**ST. MARIES PLYWOOD, Employer,
Defendant-Appellant,**

and

**Department of Employment,
Defendant-Respondent.**

No. 13088.

Supreme Court of Idaho.

July 3, 1980.

Rehearing Denied Aug. 28, 1980.

Wynne M. Blake of Blake, Feeney & Clark, Lewiston, for employer, defendant-appellant.

Peter Wagstaff, Coeur d'Alene, for Parker.

R. LaVar Marsh, Deputy Atty. Gen., Boise, for Dept. of Employment.

BAKES, Justice.

St. Maries Plywood, appellant employer, appeals from an order of the Industrial Commission granting claimant respondent Parker unemployment compensation benefits. The employer contends that the commission erred (1) in placing the burden of proof on the employer to establish that the employee was discharged from his employment for misconduct; (2) in concluding that the employee's threats to fellow workers and to the employer's plant did not constitute "misconduct" within the meaning of the Employment Security Act; and (3) in concluding that threats made by the employee after he was ordered to stop threatening his co-workers did not constitute employee misconduct.

Claimant Leonard M. Parker, in January, 1978, had worked thirteen years and three months in the employer's plywood mill located at St. Maries, Idaho. Claimant's daughter began work on the green chain in the mill in January, 1978. She experienced difficulties the first few days and complained to her father that she thought she was being harassed on the job because she was an Indian and because of her slowness in learning the work. On January 25, 1978, she reported to her father incidents occurring that day which led her to believe that she was being harassed by her co-workers.

Parker became upset and immediately placed a telephone call to his daughter's supervisor in which he said he would "take care" of any workers who harmed his daughter and asserted that if his daughter was fired or quit her job, he would go down to the plant and "take care" of his daughter's supervisor and her crew. In the course of this telephone conversation Parker was told by his daughter's supervisor not to threaten anyone at the plant. Claimant responded that he was not making threats, but that he was tired of his children being made fun of. After receiving this phone call from Parker his daughter's foreman sent a letter to the plant management outlining the substance of the telephone conversation. On January 30, 1978, Parker met with the management and discussed the telephone incident. At this meeting Parker was told not to make any threats to anyone at the plant.

Subsequently, at a lunchroom conversation on January 31, 1978, Parker was engaged with co-workers in a conversation in which the possibility of his daughter becoming pregnant was raised by other workers. Claimant lost his temper and said that if that happened he would "put the s. o. b. in the hospital, that's what I would do." Parker then continued talking in an upset fashion and said, "You know what I should do? . . . The next time that bid comes up for the boiler room . . . I ought to put my name up on that bid, go out and learn it, and take a couple of foremen I don't like, and blow them up." As a result of these statements, claimant was discharged by his employer on February 1, 1978.

Claimant applied for unemployment compensation benefits on February 6, 1978. He was denied benefits upon his initial determination and redetermination on the grounds that he was discharged for employee misconduct. Following a hearing by the DOE appeals examiner, claimant was granted benefits, the appeals examiner determining that claimant's behavior did not constitute employee misconduct under the Employment Security Act.

The employer appealed to the Industrial Commission and a hearing was held before a commission referee. The referee, in findings of fact, conclusions of law and order dated July 26, 1978, found claimant to be eligible for unemployment benefits. The referee found that the claimant's threats were made while claimant was upset or angry, that the threats concerning his daughter's employment were conditioned upon further harassment of his daughter, and that claimant never had any actual intention of carrying out his threat to destroy the employer's plant. The referee concluded that the employer had the burden of proving claimant's misconduct and that "no intentional disregard of the employer's interests, violation of its rules or disregard of the standards of behavior which the employer has a right to expect of its employees has been established." The Industrial Commission approved and affirmed the referee's decision. The employer brings this appeal.

The Industrial Commission placed the burden upon the employer, appellant St. Maries Plywood, to prove that claimant Parker's discharge was for employee misconduct. The employer argues that the commission's allocation of burden of proof was erroneous and that, therefore, the commission's determination that claimant was eligible for unemployment compensation benefits must be reversed.

The general rule in Idaho is that an unemployment compensation benefit claimant bears the burden of proving his or her eligibility for benefits. *See, e. g., Rogers v. Trim House,* 99 Idaho 746, 588 P.2d 945 (1979); *Boodry v. Eddy Bakeries Co.,* 88 Idaho 165, 397 P.2d 256 (1964); *Watts v. Employment Security Agency,* 80 Idaho 529, 335 P.2d 533 (1959). This Court has held that where an employer contests a claimant's eligibility on the grounds that the claimant was discharged for misconduct, the employee must then prove that his discharge was not for employee misconduct in order to establish eligibility for benefits. *Oliver v. Creamer Heating & Appliance,* 91 Idaho 312, 420 P.2d 795 (1966); *Custom Meat Packing Co. v. Martin,* 85 Idaho 374,

379 P.2d 664 (1963); *Rasmussen v. Gem State Packing Co.*, 83 Idaho 198, 360 P.2d 90 (1961); *see Watts v. Employment Security Agency, supra.*

The Idaho Employment Security Act does not itself specify who bears the burden of proof on the question whether the employee was discharged for job related misconduct. The rule stated in the above cited cases, i. e., that the employee must carry the burden of proving that he was not discharged for misconduct, can be traced to the following language in *Doran v. Employment Security Agency*, 75 Idaho 94, 267 P.2d 628 (1954):

> "The law . . . enjoins upon the employment security agency, and all those having to do with the administration of the law, the duty of safeguarding the employment security fund from the claims of unworthy and ineligible claimants, so that funds will be available for the relief and benefit of those whom the law seeks to protect. It is for this reason that the burden of establishing eligibility is placed upon, and must be borne by, the claimant whenever his claim to benefits is questioned." 75 Idaho at 98, 267 P.2d at 631.

The appellant employer relies upon the above cited cases in support of its argument that the Industrial Commission erred in not requiring claimant Parker to carry the burden of proving that he was not discharged for misconduct. Parker argues that the commission properly placed the burden of proving that he was discharged for misconduct on the employer. Parker concedes that generally the burden is on the claimant to prove his eligibility for benefits. *O'Neal v. Employment Security Agency*, 89 Idaho 313, 404 P.2d 600 (1965); *Watts v. Employment Security Agency, supra.* Parker asserts, however, that the fact that a claimant was discharged for misconduct is an exception to a claimant's eligibility which should be proven by the employer claiming the benefit of the exception. Parker cites several cases from our sister states to support his argument.

We have examined unemployment compensation cases from other jurisdictions and find that the vast majority of states which have ruled on the question require the employer to carry the burden of proving that the claimant was discharged for employee misconduct when the employer challenges the right of an otherwise eligible claimant to benefits. *See, e. g., Prescod v. California Unemployment Insurance Appeals Board*, 57 Cal.App.3d 29, 127 Cal.Rptr. 540 (1976); *Maywood Glass Co. v. Stewart*, 170 Cal.App. 719, 339 P.2d 947 (1959); *Industrial Laundry v. Review Board of Indiana Employment Security Division*, 147 Ind.App. 40, 258 N.E.2d 160 (1970); *Brown Hotel Co. v. Edwards*, 365 S.W.2d 299 (Ky.1962); *January v. Administrator, Division of Employment Security*, 155 So.2d 250 (La.App.1963); *Fresta v. Miller*, 7 Mich.App. 58, 151 N.W.2d 181 (1967); *Michigan Tool Co. v. Michigan Employment Security Comm'n*, 346 Mich. 673, 78 N.W.2d 571 (1956); *Babcock v. Employment Division*, 25 Or.App. 661, 550 P.2d 1233 (1976); *Unemployment Compensation Board of Review v. Tumalo*, 25 Pa.Cmwlth. 264, 360 A.2d 763 (1976); *Transport Oil, Inc. v. Cummings*, 54 Wis.2d 256, 195 N.W.2d 649 (1972); *Coopers, Inc. v. Industrial Comm'n*, 15 Wis.2d 589, 113 N.W.2d 425 (1962). *See, generally,* 76 Am.Jur.2d, Unemployment Compensation § 52 (1975) ("where the employer charges a claimant with such misconduct as would bring about his disqualification from unemployment compensation benefits, it is incumbent upon the employer to sustain the charge by a reasonable preponderance of the evidence."); 81 C.J.S. Social Security and Public Welfare § 275 (1977).

Employee misconduct in these cases is treated as an affirmative defense available to the employer to the employee's claim for benefits which must be proven by the employer asserting it and seeking its benefit. It is noted in *Michigan Tool Co. v. Michigan Employment Security Comm'n, supra,* that the facts indicating the reasons for employee's discharge are peculiarly within the knowledge and control of the employer. It is thought that the employer should be required to prove those facts.

We have examined the statutes which govern unemployment compensation benefits in the cases cited above and find that in all but Wisconsin an employee's discharge for misconduct is characterized as a condition which *disqualifies* a claimant from benefits.[1] In Wisconsin, as in Idaho, the statutory provisions denying benefits to an employee who has been discharged for misconduct are found within the general claimant eligibility sections. Wisconsin places the burden of proving that a claimant was discharged for misconduct upon the employer. It is our opinion that the organization of the Idaho Employment Security Act does not preclude placing the burden of proving that an employee was discharged for job related misconduct upon the employer. Employee misconduct is in the nature of an affirmative defense and, as such, the burden of proving it should be cast upon the employer asserting the defense. The employer is in a unique position to know the reasons for his employee's discharge and access to the facts relating to that discharge will be more readily obtained by the employer than by the employee. Further, as a practical matter, the task of proving the existence of employee misconduct will be much easier for the employer than would be the employee's task of disproving a charge of employee misconduct. The employee may not always know what the employer's reasons were for discharging him.

 We hold, therefore, that when an employer challenges an unemployment compensation benefit claimant's eligibility for benefits on the ground that the claimant was discharged for employee misconduct, the employer must carry the burden of proving that the employee was in fact discharged for employment related misconduct. We believe this to be consistent with the rule that the Idaho Employment Securi-

ty Act must be liberally construed to effect its purpose of helping to alleviate the social and economic hardships caused by unemployment which does not result from fault of the employee. *Smith v. Department of Employment*, 100 Idaho 520, 602 P.2d 18 (1979); *In re Potlatch Forests, Inc.*, 72 Idaho 291, 240 P.2d 242 (1952). Our cases which have held that the employee must carry the burden of disproving an employer's claim that he was discharged for employee misconduct are overruled.[2] The Industrial Commission's allocation of burden of proof in the proceedings below is approved.

The appellant, St. Maries Plywood, also argues that the Industrial Commission erred in finding that claimant Parker's conduct did not constitute employee misconduct. Employee misconduct which will serve to disqualify a claimant from receipt of unemployment compensation benefits has been defined by this Court as

"wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of the standards of behavior which the employer has a right to expect from its employees." *Johns v. S.H. Kress & Co.*, 78 Idaho 544, 548, 307 P.2d 217, 219 (1957).

The referee and the Industrial Commission below applied the proper standard of law as pronounced in *Johns* in determining whether Parker was discharged from his job for employee misconduct within the meaning of the Idaho Employment Security Act.

 Our review of the decisions of the Industrial Commission is limited to questions of law and to a determination whether the commission's findings are supported by substantial and competent evidence. Idaho Const. Art. 5, § 9; *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978). The evidence in the record supports the finding

---

1. *See, e. g.,* Cal. Unemployment Ins. Code § 1256 (West); I.C. § 72–1366(e); Ind.Code Ann. § 22–4–15–1 (Burns); Ky.Rev.Stat. § 341.-370(b); La.Rev.Stat.Ann. § 23:1601(2) (West); Mich.Comp.Laws Ann. § 421.29; Minn.Stat. Ann. § 268.09 (West); Or.Rev.Stat. § 657.176; 43 Pa.Stat.Ann. § 802(e) (Purdon); and Wis. Stat. § 108.04.

2. *E. g., Oliver v. Creamer Heating & Appliance,* 91 Idaho 312, 420 P.2d 795 (1966); *Custom Meat Packing Co. v. Martin,* 85 Idaho 374, 379 P.2d 664 (1963); *Rasmussen v. Gem State Packing Co.,* 83 Idaho 198, 360 P.2d 90 (1961).

that claimant Parker is a very emotional and gregarious individual and that his outbursts were merely spontaneous verbal expressions of emotion not intended to be taken literally. Although we might conclude otherwise if we were the finder of fact in this case, there is evidence to sustain the commission's findings and they are affirmed.

Affirmed. Costs are awarded to respondent.

McFADDEN and BISTLINE, JJ., concur.

SHEPARD, Justice, dissenting.

I believe that the majority opinion errs in its conclusion of law. As the majority opinion notes, the record amply demonstrates that Parker made threats of physical injury to fellow workers. Parker was advised by supervisory personnel to stop making such threats. He did not comply with that direction, but continued making threats, including one to blow up the employer's plant. For that conduct he was discharged. Hence, I see no question presented in the instant case requiring any discussion of the burden of proof of employee misconduct.

The only remaining question is whether the conduct of Parker constituted "misconduct" as a matter of law. I can conceive of no state of facts that would more clearly demonstrate misconduct as a matter of law. The majority opinion agrees with the finding of the Industrial Commission that the threats were made while Parker was upset or angry, that the threats were only conditional and that Parker "never had any actual intention of carrying out his threat to destroy the employer's plant."

I applaud the majority of the Court and the Industrial Commission for their asserted ability to examine the mental processes of Parker. However, I note that this Court most recently in *Matthews v. Bucyrus-Erie Co.*, 101 Idaho 657, 619 P.2d 1110 (1980) (rehearing granted June 9, 1980), said that in the test for misconduct in standard-of-behavior cases, "[t]he employee's subjective state of mind is irrelevant."

Here there is nothing in the record to indicate that Parker was speaking in jest when he made the threats. Under such circumstances, I see no reason why an employer should be expected or required to tolerate threats of violence either toward other employees or to the physical security of the plant. I would hold that such constitutes misconduct as a matter of law.

DONALDSON, C. J., concurs.