# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41991

| | | |
|---|---|---|
| JOAN M. THRALL, | ) | |
| | ) | |
| Claimant-Appellant, | ) | |
| | ) | Boise, January 2015 Term |
| v. | ) | |
| | ) | 2015 Opinion No. 4 |
| ST. LUKE'S REGIONAL MEDICAL | ) | |
| CENTER, Employer; BOISE PATHOLOGY | ) | Filed: January 23, 2015 |
| GROUP, P.A., Major Base Employer; and | ) | |
| IDAHO DEPARTMENT OF LABOR, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

Appeal from the Idaho Industrial Commission.

The decision of the Industrial Commission is <u>vacated</u> and the case is <u>remanded</u> for proceedings consistent with this opinion.

Hammond Law Office, PA., Caldwell, for appellant. Gregory O. Lawson argued.

Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent Idaho Department of Labor.

Perkins Coie, LLP, Boise, for respondent St. Luke's. Christine M. Salmi argued.

_____

J. JONES, Justice

Joan M. Thrall appeals from a decision of the Idaho Industrial Commission denying her unemployment benefits. The Commission concluded that Thrall was not entitled to benefits because she voluntarily resigned from St. Luke's Regional Medical Center without good cause. Thrall timely appealed, arguing that she was discharged and that St. Luke's failed to show the discharge was for misconduct.

## I.
## FACTUAL AND PROCEDURAL HISTORY

Joan M. Thrall was employed by St. Luke's Regional Medical Center as a laboratory technician from March 13, 2000, to October 4, 2013. Between April and October of 2013, Thrall

1

made several errors that led to her departure from St. Luke's. On May 30, Thrall's supervisor sent her an email memorializing a verbal warning for "on going mistakes" involving the mislabeling of laboratory specimens or results. In August, a written warning was issued when Thrall failed to associate a laboratory result with an existing patient record and instead created a new patient record. Thrall was required to complete two weeks of retraining in connection with this error. A subsequent written warning was issued on September 23. The warning stated that Thrall improperly handled lab results for two patients by misspelling their names. It noted that "[i]mmediate and sustained improvement is required or further corrective action up to and including termination may result." Thrall was suspended for one week in connection with this error. After returning to work, Thrall committed another error on October 1 by associating a laboratory specimen from one patient with the file of another patient because the two happened to have the same last name.

Thrall was asked to attend a meeting on October 4 with her immediate supervisor, Anne Sergeant, and the laboratory manager, Brenda Miranda. Thrall, Sergeant, and Miranda testified inconsistently regarding that meeting. According to Thrall, she was immediately asked whether she would resign and was told that she would be discharged if she did not. Thrall claims that she signed a resignation form only after being given this choice and discussing the benefits of resignation over termination with Sergeant and Miranda. According to Sergeant and Miranda, they brought Thrall in to discuss her resignation and Thrall would have been discharged immediately had she not resigned, but Thrall was never told that she would be discharged if she did not resign. All parties agree that Thrall elected "personal reasons" as the grounds for her resignation after being instructed by Sergeant that it was the appropriate selection.

Thrall applied for unemployment benefits and was denied by the Department of Labor ("DOL") on the grounds that she voluntarily resigned and failed to show that she did so for good cause. Thrall appealed that initial determination, and a telephonic hearing was held before an appeals examiner. The appeals examiner reversed the DOL's initial determination and allowed Thrall benefits, finding that Thrall was discharged because she was forced to resign and that St. Luke's failed to present evidence that Thrall was discharged for misconduct.

St. Luke's appealed to the Idaho Industrial Commission. After a de novo review of the record, including a recording of the telephonic hearing before the appeals examiner, the Commission reversed the appeals examiner and denied Thrall benefits. It held that Thrall failed

to show that she was discharged and failed to show that she resigned for good cause because she failed to show that she had not committed misconduct in connection with her employment. Thrall timely appealed, arguing that the Commission erred in concluding that she failed to show that she was discharged and, as a result, improperly shifted the burden away from St. Luke's to show that her discharge was for misconduct. In addition, Thrall argues that even if she had the burden to show that she did not commit misconduct in connection with her employment, she met that burden by showing that her errors were inadvertent.

## III.
## DISCUSSION

### A. Standard of Review and Applicable Law

"When this Court reviews a decision from the Industrial Commission, we exercise free review over questions of law, but review questions of fact only to determine whether the Commission's findings are supported by substantial and competent evidence." *Uhl v. Ballard Med. Prods., Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Id.* "We will not disturb the Industrial Commission's conclusions regarding the credibility and weight of evidence unless the conclusions are clearly erroneous" and "[w]e do not re-weigh the evidence or consider whether we would have reached a different conclusion from the evidence presented." *Id.* "[T]his Court views all the facts and inferences in the light most favorable to the party who prevailed before the Industrial Commission." *Neihart v. Universal Joint Auto Parts, Inc.*, 141 Idaho 801, 802–03, 118 P.3d 133, 134–35 (2005). However, we "must set aside the order of the Commission where it failed to make a proper application of law to the evidence." *Bortz v. Payless Drug Store*, 110 Idaho 942, 945, 719 P.2d 1202, 1205 (1986) (internal quotation marks omitted).

Idaho Code section 72-1366(5) provides that a party seeking unemployment benefits is ineligible for benefits if the claimant's unemployment is "due to the fact that he left his employment voluntarily without good cause connected with his employment, or that he was discharged for misconduct in connection with his employment." The claimant has the burden to show that she was discharged and did not voluntarily resign. *Appeals Exam'r of Idaho Dep't of Labor v. J.R. Simplot Co.*, 131 Idaho 318, 320, 955 P.2d 1097, 1099 (1998). If the claimant was discharged, it is then the employer's burden to show by a preponderance of the evidence that the discharge was for misconduct in connection with the employment. *Id.* If, on the other hand, the

3

claimant voluntarily left her employment, it is her burden to show that she had good cause in connection with her employment to do so. *Hine v. Twin Falls Cnty.*, 114 Idaho 244, 245, 755 P.2d 1282, 1283 (1988). Each of these questions—whether the claimant was discharged or voluntarily left her employment, *Johnson v. Idaho Cent. Credit Union*, 127 Idaho 867, 869, 908 P.2d 560, 562 (1995), whether a discharge was for misconduct, *J.R. Simplot Co.*, 131 Idaho at 321, 955 P.2d at 1100, and whether there was good cause for the claimant to voluntarily leave her employment, *Ewins v. Allied Sec.*, 138 Idaho 343, 347, 63 P.3d 469, 473 (2003)—are factual questions for the Commission.

**B. The Commission erred as a matter of law when it concluded that Thrall failed to show that she was discharged.**

The Commission's discussion concerning whether Thrall made an adequate showing that she was discharged is brief. The Commission's order states that:

> The record does not sufficiently establish that Employer discharged Claimant. Claimant testified that Ms. Sergeant and Ms. Miranda informed her that she could either quit or be discharged. They discussed the resignation option. After doing so, it is undisputed that Claimant chose to resign. She completed the resignation form and submitted it to employer.

> The record shows that Claimant was aware that she could either quit or be discharged, and, after discussing the matter with Employer, she chose to resign. Even though Claimant did so to avoid being discharged, that fact alone does not require that this matter be reviewed as a discharge. *See Hine v. Twin Falls County*, 114 Idaho 244, 755 P.2d 1282 (1988). The choice between quitting and being discharged was solely within Claimant's discretion. She chose to quit. Claimant has not sufficiently shown that the separation resulted from a discharge.

The Commission found that Thrall knew that she faced the choice of resigning or being immediately discharged, but appears to have concluded that she failed to show that she was discharged because she elected to resign in the face of that choice.

The question whether an employee was discharged "does not depend upon the use of formal words of firing." *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 334, 563 P.2d 54, 58 (1977). Rather, "[t]he test is whether sufficient words or actions by the employer would logically lead a prudent man to believe his tenure had been terminated." *Id.* at 334–35, 563 P.2d at 58–59. When an employee is asked to resign to avoid being fired, "the meaning is clear that the employee is being dismissed." *Id.* at 335, 563 P.2d at 59. "[T]he distinction between a 'dismissal' and the face-saving device of a 'resignation which if not immediately tendered will be followed by dismissal,' is a distinction without a difference." *Alegria v. Idaho First Nat.*

4

*Bank*, 111 Idaho 314, 316, 723 P.2d 858, 860 (1986).

There is no dispute that Thrall would have been immediately discharged if she did not immediately resign. As St. Luke's notes, however, there is conflicting evidence in the record regarding whether Thrall was aware of that fact. Thrall testified that Sergeant and Miranda told her that she would be, while Sergeant and Miranda deny that claim. Despite this conflicting evidence, the Commission found that "Claimant was aware that her job was in jeopardy," "[t]he record shows that the Claimant was aware that she could either quit or be discharged," and Thrall resigned "to avoid being discharged . . . ." There is substantial and competent evidence in the record to support these findings. In addition to Thrall's testimony that she was told by Sergeant and Miranda that she would be discharged if she did not resign, Sergeant testified that Thrall was asked to the meeting to discuss "the option of resignation" because that would be "the compassionate thing to do." Sergeant and Miranda do not elaborate on what options other than resignation were on the table or how Thrall was presented with the option to resign. However, Sergeant testified that "it was probably extremely clear to [Thrall] that her job was on the line." This evidence is adequate to support the Commission's finding that Thrall was aware that she faced a choice between resignation and immediate discharge. Given that finding, the Commission erred as a matter of law by concluding that Thrall failed to show that she was discharged.

Both St. Luke's and the Commission cite *Hine v. Twin Falls County* for the proposition that an employee who resigns to avoid an immediate discharge is not thereby discharged. *Hine* does not support that proposition. Hine submitted a letter of resignation when she was informed that criminal charges would be filed against her for embezzling from her employer. *Hine*, 114 Idaho at 245, 755 P.2d at 1283. Though there was evidence that Hine would have been discharged had she not resigned, Hine argued only that the "threat of filing criminal charges against her is good cause as a matter of law for voluntarily resigning . . . ." *Id.* at 245–46, 755 P.2d at 1283–84. Hine did not argue that she was discharged. As a result, this Court's opinion did not address the question whether, as an initial matter, she was discharged or voluntarily resigned, but assumed without discussion that she voluntarily resigned and focused exclusively on Hine's argument that she had good cause to do so. *Hine* provides no support for the claim that Thrall voluntarily resigned.

St. Luke's also cites a number of cases for the proposition that a resignation to avoid a

5

merely possible discharge at an indeterminate time in the future is not a discharge. *See Hart v. Deary High Sch.*, 126 Idaho 550, 552–53, 887 P.2d 1057, 1059–60 (1994) (holding that an employee was not discharged where the employee resigned when he was told that he might be discharged in the future if he did not improve his productivity). While that view is correct, it is irrelevant given the Commission's finding, supported by substantial and competent evidence, that if Thrall "had not resigned, she would have been immediately discharged."

Because the Commission's factual findings demonstrate that Thrall satisfied her burden to show that she was discharged, Thrall was entitled to benefits unless the discharge was for misconduct in connection with her employment, with St. Luke's carrying the burden to show the discharge was for misconduct. *See Johnson*, 127 Idaho at 869, 908 P.2d at 562 (holding that "the burden of proving discharge is on the claimant. Only if the claimant proves discharge does the employer have the burden of proving misconduct."). When the Commission mistakenly concluded that Thrall voluntarily resigned, it improperly placed the burden on Thrall to show that she was not discharged for misconduct. The Commission denied Thrall benefits because she "has not demonstrated that her imminent discharge would have been for reasons other than misconduct connected with her employment." "[I]f a decision, taken as a whole, appears to reflect a misapprehension of law, the proper appellate response is to vacate the decision and to remand the case for reconsideration in light of the proper legal framework." *Urry v. Walker & Fox Masonry Contractors*, 115 Idaho 750, 755, 769 P.2d 1122, 1127 (1989). The Commission's order in this case misapplied the law to find that Thrall voluntarily resigned and, as a result, misallocated the burden of proof with respect to misconduct. Though the Commission's order includes a variety of statements regarding misconduct and Thrall's errors in the performance of her job duties, it is unclear to what extent those statements were a consequence of its misallocation of the burden of proof. Because a remand is necessary to determine whether St. Luke's can carry its burden to show that the discharge was for misconduct in connection with Thrall's employment, we need not address the question whether the Commission erred in its analysis of misconduct when the burden was improperly allocated to Thrall.

## V.
## CONCLUSION

The Commission's decision is vacated and the case is remanded to consider whether St. Luke's can satisfy its burden to show that Thrall's discharge was for misconduct in connection

6

with her employment under Idaho Code section 72-1366(5). Costs to Thrall.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.